UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

SCOTT KEARNEY, VERONIKA KEARNEY,
and JULIROBI LLC                                                                                                PLAINTIFFS

No. 12-cv-1088

DAVID BURNSIDE, BURNSIDE PRODUCING
LLC, and REBEL PRODUCING LLC                                                                        DEFENDANTS

**Brief in Support of Motion for Summary Judgment**

Plaintiffs Scott Kearney ("Kearney"), his wife Veronika Kearney ("Mrs. Kearney"), and Julirobi, LLC ("Julirobi") brought this action seeking damages for breach of contract, violations of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duty, tortious interference with business expectancy, and fraud in various forms, all based on Plaintiffs' previous ownership of working interests in oil and gas wells in the Hillsboro Field in Union County, Arkansas.

The Kearneys initially purchased a 20% working interest in the Hillsboro Field in May of 2008. Document 1 ("Complaint") ¶ 25. At the time of the Kearneys' initial purchase, Well-Wishers, LLC ("Well-Wishers") was the operator of the Hillsboro Field.[1] Complaint ¶ 26. The Kearneys transferred their 20% working interest to Julirobi, a company they formed for this purpose, in February 2009. Complaint ¶ 31.

Julirobi then purchased an additional 10% working interest from various entities represented by John Petito ("the Petito Group"). Complaint ¶ 32. As part of the same transaction, Burnside Producing, LLC ("Burnside Producing") purchased a 30% working interest

---

[1] Plaintiffs claim that Well-Wishers was the operator of the wells pursuant to the Joint Operating Agreement attached to their Complaint as Exhibit A. Plaintiffs have now conceded that the Joint Operating Agreement did not apply to Rebel Producing, Burnside Producing, or Burnside. *See* Exhibit A to Motion for Summary Judgment.

from the Petito Group, and the Petito Group retained a 3.33% working interest. *Id.* On May 14, 2009, Lowery-Waller Well Servicing, Inc. ("Lowery-Waller") filed a Complaint and Notice of Lis Pendens against Well-Wishers and certain wells in the Hillsboro Field to collect payment for unpaid invoices for work performed and materials furnished on the wells. *See* Exhibit D to Motion for Summary Judgment ("Motion"). Shortly thereafter, Julirobi and Burnside Producing each purchased an additional 7.5% working interest from Energy Capital Group. Complaint ¶ 34. The Lowery-Waller lawsuit and suspense of funds due to that suit are referenced in the closing statement for the purchase from Energy Capital Group. *See* Exhibit F to Motion at 3. Burnside Producing later bought additional working interests from the remaining working interest owners. Complaint ¶ 47.

In June 2009, Rebel Producing, LLC ("Rebel Producing") became operator of the Hillsboro Field. *See* Exhibit B to Motion ("Deposition of Kearney") at 110:7-10. On or about September 9, 2009, an estimate of costs for reworking the Hillsboro Field ("cash call") was sent to Julirobi along with a request for remittance of Julirobi's proportionate share. *See* Deposition of Kearney at Exhibit 6; Exhibit E to Motion. The Kearneys, residents of New York, traveled to Arkansas September 26-27, 2009, and visited the Hillsboro Field. *See* Deposition of Kearney 105:25 – 106:2; Exhibit C to Motion ("Deposition of Mrs. Kearney") at 73:8-16. The Kearneys toured the Hillsboro Field, saw the wells, and understood that the wells they saw pumping were producing oil. Deposition of Kearney at 106:15-107:9; 153:8 - 154:2; Deposition of Mrs. Kearney at 73:22 - 74:14.

On November 19, 2009, after negotiation as to price and responsibility for attorneys' fees for the ongoing Lowery-Waller lawsuit, Julirobi sold its 37.5% working interest to Burnside Producing effective May 1, 2009. *See* Exhibits F and G to Motion. On August 10, 2012,

Plaintiffs filed this suit against Burnside, Burnside Producing, Rebel Producing, Susan Burnside, Bradley Burnside, and Larry Holder.  Claims against Susan Burnside, Bradley Burnside, and Larry Holder have been dismissed, leaving Burnside, Burnside Producing, and Rebel Producing as the only remaining defendants.  *See* Documents 37 and 56 entered herein.[2]

Plaintiffs seek damages for breach of contract, violation of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duty, tortious interference with business expectancy, and various allegations of fraud.  The breach of contract claim is based on a joint operating agreement ("JOA") attached to Plaintiffs' Complaint which they now concede was not the agreement of the parties.  Alleged violations of the Arkansas Deceptive Trade Practices Act are based on a provision regarding consumers, which Plaintiffs concede they were not with respect to the Hillsboro Field working interests, and allegations of fraud.

The breach of fiduciary duty claims are based on fraud and Burnside Producing's failure to allow Julirobi to participate in the purchase of additional working interests in the Hillsboro Field, a purchase in which Plaintiffs never asked to participate.  The tortious interference claim is also based on Burnside Producing's purchase of these working interests, which cannot be improper under Arkansas law for the same reason that Plaintiffs never asked to participate in the purchase.

All remaining claims are based on fraud, which Plaintiffs claim was perpetrated by the "cash call" which they allege was "false" or "contrived" and Defendants' failure to inform Plaintiffs that some of the wells in the Hillsboro Field were producing oil.  The cash call cannot be the basis for fraud because as an estimate it was both an opinion and a statement regarding future events which cannot support a claim of fraud.  Plaintiffs knew that some of the wells in

---

[2] Plaintiffs also brought suit against their attorney, Charles A. Morgan, and his law firm, Dunn, Nutter & Morgan, LLP.  *See* Case No. 1:12-cv-01089-SOH.  That case has also been dismissed.

the Hillsboro Field were producing and so could not have justifiably relied on information, or lack of information, to the contrary.

Because all of Plaintiffs' claims must fail as a matter of law, Defendants are entitled to summary judgment.

### *Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct 2548, 91 L.Ed. 265 (1986). The burden of sustaining a motion for summary judgment is on the moving party, and all proof submitted must be viewed in the light most favorable to the party resisting the motion, with any doubts or inferences being resolved against the moving party. *See, e.g., Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743 (8th Cir. 1996).

However, once the moving party makes a prima facie showing that it is entitled to summary judgment, the non-moving party must go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *See Uhiren v. Bristol-Myers Squibb Co.*, Inc., 346 F.3d. 824 (8th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)). The non-moving party must demonstrate that there is sufficient evidence such as would allow a reasonable jury to render a verdict for the non-moving party. *See, e.g., Anderson*, 477 U.S. 242. "[T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* at 322.

### *Breach of Contract*
(Count 1)

Plaintiffs' first count is for breach of contract. *See* Complaint ¶¶ 74-79. "In order to prove a breach-of-contract claim, one must prove 'the existence of an agreement, breach of the agreement, and resulting damages.'" *Keith Capps Landscaping & Excavation, Inc. v. Van Horn Construction, Inc.,* 448 S.W.3d 207, 210 (Ark. App. 2014) (citing *Schwyhart v. J.B. Hunt, LLC*, 436 S.W.3d 173, 180 (Ark. App. 2014)).

Plaintiffs' breach of contract claim is based on the JOA attached to their Complaint as Exhibit A. *See* Complaint ¶¶ 75-76. Plaintiffs have now conceded that Rebel Producing was *not* a party to the JOA attached to the Complaint at any time relevant to Plaintiffs' claims. *See* Exhibit A to Motion ("Exhibit A") 1. Plaintiffs have also conceded that neither Burnside Producing nor David Burnside was a party to the JOA. *See id.* at 2-3. Because Plaintiffs now agree that the contract they alleged to have been breached does not exist, Defendants are entitled to summary judgment on Count 1 of Plaintiffs' Complaint.

Because Defendants must prevail on Plaintiffs' breach of contract claim, they should also recover their attorneys' fees. Arkansas law provides that "[i]n any civil action to recover on . . . breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs." Ark. Code Ann. §16-22-308. A defendant who successfully defends a breach of contract claim on the basis that no contract existed between the parties is considered the prevailing party for purposes of this statute. *See, e.g., Cumberland Financial Group, LTD., v. Brown Chemical Co.*, 810 S.W.2d 49 (Ark. App. 1991).

Plaintiffs cannot recover for breach of a contract that did not exist, and Defendants are entitled to summary judgment on Count 1 of Plaintiffs' Complaint. Defendants should also

recover their attorneys' fees, and this Court should direct Defendants' attorneys to provide their affidavit of fees and related expenses upon entry of summary judgment.

### *Arkansas Deceptive Trade Practices Act*
(Count 2)

Count 2 of Plaintiffs' Complaint alleges violation of the Arkansas Deceptive Trade Practices Act. *See* Complaint ¶¶ 80-87. Plaintiffs base their claim on three specific provisions of the Arkansas Deceptive Trade Practices Act: Ark. Code Ann. § 4-88-107(a)(8); Ark. Code Ann. § 4-88-107(a)(10); and Ark. Code Ann. § 4-88-108.

Plaintiffs first cite Ark. Code Ann. §4-88-107(a)(8) which provides that "[d]eceptive and unconscionable trade practices made unlawful and prohibited by this chapter include . . . [k]nowingly taking advantage of *a consumer* who is reasonably unable to protect his or her interest because of: (A) Physical infirmity; (B) Ignorance; (C) Illiteracy; (D) Inability to understand the language of the agreement; or (E) A similar factor[.]" (Emphasis added.) "Consumer" is not defined by the Deceptive Trade Practices Act, but Ark. Code Ann. § 4-1-201(b)(11) provides that a "[c]onsumer means an individual who enters into a transaction primarily for personal, family, or household purposes."

Kearney and Mrs. Kearney have both admitted that they were not "consumers" in regard to their interest in the Hillsboro Field. Kearney testified, "I'm not suing because I use oil. I'm suing because I owned the fields." Deposition of Kearney at 150:17-18. Mrs. Kearney also admitted that she was not buying anything from the Hillsboro Field. Deposition of Mrs. Kearney at 99:7-9. Rather than being consumers, Plaintiffs purchased oil and gas working interests for investment purposes—the antithesis of "personal, family, or household purposes."

Kearney testified that he and his wife got involved in oil and gas investments to reduce their taxes. *See* Deposition of Kearney at 231:23-24. He explained that "I have a lot of

apartment buildings, and I wanted to reduce the amount of income that I had to pay in taxes. I'm familiar with depreciation and I researched and found that there is a great amount of tax advantages in oil and gas income." *Id.* at 231:22 – 232:1. Mrs. Kearney also testified that they "wanted to diversify." Deposition of Mrs. Kearney at 27:3. "We were invested in real estate, as [Kearney's] testimony attests, and we wanted to try another venue, and oil and gas at the time seemed like a good idea." *Id.* at 27:3-6. Because Plaintiffs were not "consumers" for purposes of their involvement in the Hillsboro Field, Defendants are entitled to summary judgment on the portion of Count 2 of Plaintiffs' Complaint based on Ark. Code Ann. §4-88-107(a)(8), which specifically applies to consumers.

Plaintiffs also cite Ark. Code Ann. § 4-88-107(a)(1), which provides that ""[d]eceptive and unconscionable trade practices made unlawful and prohibited by this chapter include . . . [e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade," and Ark. Code Ann. § 4-88-108, which provides that "[w]hen utilized in connection with the sale or advertisement of any good, services, or charitable solicitation, the following shall be unlawful: (1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Because this portion of Plaintiffs' Deceptive Trade Practices Act claim shares the common threads of alleged false and deceptive acts, fraud, and concealment, it is properly discussed with Plaintiffs' fraud claims below.

### *Breach of Fiduciary Duty and Tortious Interference with Business Expectancy*
(Counts 3, 4, and 9)

Plaintiffs assert claims for breach of fiduciary duty against both Rebel Producing and Burnside Producing. Plaintiffs assert that "Rebel Producing owed a fiduciary duty and a duty of

7

fair dealing to Julirobi as a non-operator." Complaint ¶ 89. Plaintiffs then allege Rebel Producing breached the duty of fair dealing by concealing oil production and representing that a significant cash investment was necessary. Assuming *arguendo* that Rebel Producing owed a fiduciary duty to Plaintiffs, these allegations are based on the same allegations as Plaintiffs' fraud claims and are properly discussed with same below.

As to Burnside Producing, Plaintiffs assert a fiduciary duty stemming from the relationship of joint adventurers. *See* Complaint ¶ 95. Plaintiffs assert that Burnside Producing breached this duty when it acquired additional working interest in the Hillsboro Field. *See* Complaint ¶ 96. Assuming *arguendo*, that such a relationship existed in the absence of any joint operating agreement, Arkansas case law is clear that Burnside Producing's obligation to Plaintiffs with respect to the additional working interest was limited to allowing them to participate in the purchase upon payment of a proportionate share of the purchase price.

In *Johnson v. Lion Oil Co.*, 227 S.W.2d 162 (Ark. 1950), the plaintiffs had entered into a contract to drill oil wells for a half interest in the leasehold. The plaintiffs then asked the defendant to help them fulfill that contract, and a written agreement was entered into by the plaintiffs, the defendant, and the leaseholders. *See Johnson* at 163. The defendant had informed plaintiffs that the leaseholders might be willing to sell the remaining half interest, and the plaintiffs had made arrangements for the financing of their portion of the purchase price. *See id.* at 164. The defendant then purchased the remaining half interest without notice to the plaintiffs. *See id.* The *Johnson* plaintiffs asked to share in the purchase within three months and brought suit within ten months of the purchase to compel the defendant to allow them to participate. *See id.* at 166.

The *Johnson* court held that the plaintiffs were entitled to participate in the purchase of the additional leasehold interest, but the *Johnson* plaintiffs had asked to do so and stood prepared with their portion of the purchase price. The Arkansas Supreme Court had previously held, albeit outside of the oil and gas context, that one was not entitled to a deed conveying a half interest in property until he had performed his obligation under the agreement giving rise to his claim. *See Linebarger v. Late*, 216 S.W.2d 56 (Ark. 1948).

In *Linebarger*, the owner of a lot agreed with the owner of a house that the house would be moved to the lot, the moving and repair expense would be shared, and that the owner of the house would receive a half interest in the lot. *See id.* The Arkansas Supreme Court noted that the lot owner had a duty to protect the interest of the house owner and execute a deed for a half interest in the property upon the house owner's payment of his share of the costs but had the right to retain the deed until payment was made. *See id.* at 59.

In the case at bar, Burnside Producing's duty to Plaintiffs with respect to the additional working interest, if there was any duty at all, was only to allow them to participate in the purchase upon payment of a portion of the purchase price. There is no evidence that Plaintiffs ever sought to pay a portion of the purchase price for the additional working interest in question, and Burnside Producing is entitled to summary judgment on Plaintiffs' claim for breach of fiduciary duty.

Plaintiffs also claim that Burnside Producing's acquisition of this additional working interest was an interference with Julirobi's business expectancy of being able to purchase additional working interests in the Hillsboro Field. Complaint ¶¶ 134-40. To prove their claim for tortious interference, Plaintiffs must demonstrate: (1) a valid business relationship or expectancy; (2) the interfering party has knowledge of the relationship; (3) intentional

9

interference induced a breach of the relationship; and (4) as a result, the plaintiff suffered damage." *Mountain Home Flight Service, Inc. v. Baxter County, Ark.*, 758 F.3d 1038, 1044 (8th Cir. 2014) (citing *Stewart Title Guar. Co. v. American Abstract & Title Co.*, 215 S.W.3d 596 (2005). *See also, Vowell v. Fairfield Bay Community Club, Inc.*, 58 S.W.3d 324, (2001); *Hunt v. Riley*, 909 S.W.2d 329 (1995).

Plaintiffs must also show that Defendants' conduct was "improper." *Id.* Factors to be considered in determining whether Defendants' conduct was improper are: "(1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties." *Vowell*, 58 S.W.3d at 329.

The only allegation of improper conduct by Burnside Producing with respect to the purchase of the additional working interest is that Plaintiffs were not afforded the opportunity to share in the purchase. Under *Johnson* and *Linebarger*, it is clear that Burnside Producing's obligation was to allow Plaintiffs to participate upon payment of a portion of the purchase price. Because there is no evidence that Plaintiffs ever offered to pay a portion of the purchase price for the additional working interest, there is no improper conduct, and Defendants are entitled to summary judgment on Plaintiffs' claim for tortious interference with business expectancy.

### *Fraud*
(Counts 5, 6, 7, and 8)

The remaining counts of Plaintiffs' Complaint, as well as the remaining portions of counts for violation of the Arkansas Deceptive Trade Practices Act and breach of fiduciary duty against Rebel Producing, all allege fraud. In order to recover on their fraud claims, Plaintiffs

10

must prove: "1) a false representation of a material fact, 2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation, 3) intent to induce action or inaction in reliance upon the representation, 4) justifiable reliance on the representation, and 5) damage suffered as a result of the reliance." *Overturff v. Read*, 442 S.W.3d 862, 868 (Ark. App. 2014). *See also*, *Hobson v. Entergy Arkansas, Inc.*, 432 S.W.3d 117 (Ark. App. 2014). Where one claiming fraud fails to establish that a false representation of material fact was ever made by the defendant, the claim for fraud fails. *See Overturff* at 868.

Constructive fraud does not include the element of actual dishonesty or intent to deceive, but does require proof of a misrepresentation of material fact. *See Hobson* at 124. "It is well-established that representations that are promissory in nature, or of facts that will exist in the future, though false, will not support an action for fraud." *Id.* (citing *Anthony v. First Nat'l Bank of Magnolia,* 431 S.W.2d 267 (Ark. 1968). The Arkansas Supreme Court has explained:

> One of the elements of deceit is that the misrepresentation alleged must typically be a misrepresentation of fact. In the context of negotiating a contract, a misrepresentation sufficient to form the basis of a deceit action may be made by one prospective party to another and must relate to a past event, or a present circumstance, but not a future event. "An assertion limited to a future event may be a promise that imposes liability for breach of contract or a mere prediction that does not, but it is not a misrepresentation as to that event."

*Hobson* at 124. *See also*, *Pambiachi v. Howell*, 265 S.W.3d 788 (Ark. App. 2007) ("expected recovery" was a future event on which fraud could not be predicated); *P.A.M. Transport, Inc. v. Arkansas Blue Cross & Blue Shield*, 868 S.W.2d 33 (Ark. 1993) (interpretations of liability cap made before contract was signed could not represent past event or present circumstance).

"An expression of opinion may constitute fraud only if the actor knew when stating the opinion that it was false." *Horn v. Ray E. Friedman & Co.*, 776 F.2d 777 (8th Cir. 1985). *See*

11

*also*, *Gordon v. Butler*, 105 U.S. 553, 26 L.Ed. 1166 (1881) ("The law does not fasten responsibility upon one for expressions of opinion as to matters in their nature contingent and uncertain.") Further, fraud cannot be predicated upon an alleged misrepresentation as to a matter of law. *See, e.g., Pambianchi v. Howell*, 265 S.W.3d 788 (Ark. App. 2007).

A claim for fraud must also fail where the plaintiff fails to show reasonable reliance on an alleged false statement. *See, e.g., Burgess v. French*, 263 S.W.2d 578 (Ark. App. 2007) (purchaser was precluded from claiming fraud where he was aware of home's disrepair and had an obligation to make further inquiry after notice of exposed electrical wiring and puddle of water in living room). Where the party claiming fraud has knowledge of the matter in question, there is no fraud. *See Joseph v. Baker*, 128 S.W. 864 (Ark. 1910) ("In order for the plaintiff to recover in this action of deceit, it was essential that he was ignorant of the matter represented to him; for, if he had knowledge of the actual number of acres that was contained in the tract, and knew that any other statement made by defendant was false before the trade for the land was finally consummated, then he could not have been deceived by such representation.")

Civil conspiracy is not a separate tort, but must be based on underlying tortuous activity. *See Roach Mfg. Corp. v. Northstar Indus. Inc.*, 630 F.Supp. 2d 1004 (E.D. Ark. 2009); *Varner v. Peterson Farms*, 371 F.3d 1011 (8th Cir. 2004). Where the underlying tort must be dismissed, a claim for civil conspiracy must be dismissed as well. *See id.*

In the case before this Court, there is no false statement of material fact or justifiable reliance on a false representation, both of which are required to support Plaintiffs' fraud claims. Although Plaintiffs' allegations are repeated throughout their Complaint in various counts, their claims boil down to two points: (1) they were given an estimate for reworking the Hillsboro Field which they claim was "false" or "contrived"; and (2) they were not told that the wells were

12

producing oil and revenues from production were held in suspense due to the lawsuit filed by Lowery-Waller.

### Estimate of Cost of Needed Repairs

Plaintiffs repeatedly allege that the "cash call" was "false," "contrived" or otherwise inaccurate:

- "The misleading statements, falsehoods, and failure to provide affirmative information, as it was required to do, and the false 'cash call' issued by Rebel Producing, constitute deceptive business practices in violation of Ark. Code Ann. § 4-88-107(a)(10) because they were intended to create and in fact did create the false impression that the Wells would not be productive until the 'cash call' was met." *See* Complaint ¶ 83.

- "The contrived cash call and the concealment of the oil revenues from the Wells, coupled with the misrepresentations and false statements made by Mr. Burnside and Mr. Holder, created a false sense of financial urgency which induced Julirobi to sell its working interest in the Wells to Burnside Producing in November 2009." Complaint ¶ 85.

- "[Rebel Producing's] representations, again in concert with Mr. Burnside and Mr. Holder, that a significant cash investment was required to get production from the Wells sufficient to sustain operations expenses and meet longer-term maintenance and improvement expenses was also a clear breach of the duty of fair dealing that it owed as operator to Julirobi as a non-operator." Complaint ¶ 90.

- "Mr. Burnside, Mr. Holder, and Rebel Producing and their agents made misrepresentations and omissions to the effect that: (a) the Wells did not have sufficient production to sustain current operating expenses; (b) a significant cash investment was necessary to get a level of production from the Wells where operating expenses as well as longer-term maintenance and improvement expenses were met; and (c) a less sizeable cash investment to get some of the Wells was not practicable." Complaint ¶ 105.

- "The September 9, 2009 letter from Mr. Holder on behalf of Rebel Producing to Julirobi requests Julirobi's share of "a needed payment to rework the Hillsboro [F]ield." The letter did not state in any fashion that there was current oil production, but rather that "a complete rework" was necessary to "regain full production." Complaint ¶ 110.

- "When the Kearneys met with Mr. Holder and Mr. Burnside after their receipt of the copy of the general ledger, Mr. Holder and Mr. Burnside represented that the oil production was *de minimus* and that the enter cash call amount was required in order to get the wells to produce oil that would sustain expenses." Complaint ¶ 112.

- "Mr. Burnside, Mr. Holder, and Rebel Producing and their agents made misrepresentations and omission to the effect that: (a) the Wells did not have sufficient

13

production to sustain current operating expenses; "(b) a significant cash investment was necessary to get a level of production from the Wells where operating expenses as well as longer-term maintenance and improvement expenses were met; and (c) a less sizeable cash investment to get some of the Wells was not practicable." Complaint ¶ 118.

The letter in question states that it is attaching "a detail of the estimated cost along with a brief description of needed repair." Exhibit E to Motion. The cost estimate itself clearly states: "[t]his is an estimate of a complete rework of the wells in Hillsboro Field[,]" and "[t]he following will be a well by well estimate with reasons for expenses and the rebuilding of tank batteries." Deposition of Kearney at Exhibit 6. As an estimate, the cash call is a statement regarding future events which cannot be the basis for a claim of fraud. It is also an opinion as to work needing to be done on the wells, which also cannot form the basis of a fraud claim. Burnside, Burnside Producing, and Rebel Producing are entitled to summary judgment on all claims based in fraud which rely on this estimate of costs, or "cash call," as an alleged fraudulent statement.

## Oil Production and Suspense of Revenues

Plaintiffs also allege that they were not told that the wells were producing or that revenues from the sale of oil were held in suspense due to the Lowery-Waller lawsuit:

- "Rebel Producing's concealment of the oil revenues by sending an apparently incomplete copy of its general ledger to Julirobi and its failure to send monthly statements detailing revenues and expenses relating to the Wells, were concealments or omissions in violation of Ark. Code Ann. § 4-88-108." Complaint ¶ 84.[3]

- "Rebel Producing's concealment in concert with Mr. Burnside and Mr. Holder of the fact that at least some of the Wells in the Hillsboro Field were producing significant amounts of oil was a breach of the duty of fair dealing that it owed to Julirobi." Complaint ¶ 90.

---

[3] Plaintiffs also allege Rebel Producing concealed oil revenues by its failure to send monthly statements detailing revenues and expenses related to the Wells. Plaintiffs previously alleged this obligation to be imposed on Rebel Producing by the JOA, but have now conceded that the JOA did not apply to Rebel Producing. Plaintiffs have not alleged any other basis to require monthly statements from Rebel Producing.

- "Rebel Producing failed to provide Julirobi with monthly operating statement or monthly revenue checks for any months where production was ongoing, including August, September, October and November of 2009." Complaint ¶ 100.

- "The September 10, 2009 copy of Rebel Producing's general ledger sent by Mr. Holder to Julirobi contained no revenues from oil production, even though Lion Oil purchased oil from Rebel Producing on August 21, 2009." Complaint ¶ 101.

- "Mr. Burnside, through Attorney Morgan, further represented that over $250,000.00 in expenses had been incurred as of November 16, 2009 as further concealment of oil production and revenues." Complaint ¶ 103.

- "Mr. Burnside, Mr. Holder, and Rebel Producing and their agents made misrepresentations and omissions to the effect that: (a) the Wells did not have sufficient production to sustain current operating expenses; (b) a significant cash investment was necessary to get a level of production from the Wells where operating expenses as well as longer-term maintenance and improvement expenses were met; and (c) a less sizeable cash investment to get some of the Wells was not practicable." Complaint ¶ 105.

- "The September 9, 2009 letter from Mr. Holder on behalf of Rebel Producing to Julirobi requests Julirobi's share of "a needed payment to rework the Hillsboro [F]ield." The letter did not state in any fashion that there was current oil production, but rather that "a complete rework" was necessary to "regain full production." Complaint ¶ 110.

- "The September 10, 2009 copy of Rebel Producing's general ledger sent by Mr. Holder to Julirobi contained no revenues from oil production. Data from the AOGC indicates that the Wells in fact produced 560 barrels in August 2009. Lion Oil purchased oil from the Hillsboro Field on August 21, 2009, and such purchase should have been documented in the general ledger." Complaint ¶ 111.

- "When the Kearneys met with Mr. Holder and Mr. Burnside after their receipt of the copy of the general ledger, Mr. Holder and Mr. Burnside represented that the oil production was *de minimus* and that the enter cash call amount was required in order to get the wells to produce oil that would sustain expenses." Complaint ¶ 112.

- "Mr. Burnside, through Attorney Morgan, represented that over $250,000.00 in expenses had been incurred as of November 16, 2009, which further misrepresented the sufficiency of the oil production of the Wells to sustain operating expenses." *Complaint* ¶ 113.

- "Defendants failed to provide Julirobi with monthly operating statement or monthly revenue checks for any months where production was ongoing, including August, September, October, and November of 2009. The September 10, 2009 copy of Rebel Producing's general ledger sent to Julirobi contained no revenues from oil production." Complaint ¶ 123.

- "Defendants conspired together to induce Julirobi to sell its working interest in the Well[,]" and "Defendants effected this purpose by fraudulent misrepresentations and the concealment of actual oil production of the Wells." Complaint ¶¶ 129-30.

Both of the Kearneys were aware that some wells in the Hillsboro Field were producing oil prior to their sale of Julirobi's working interest to Burnside Producing. Kearney and Mrs. Kearney visited the Hillsboro Field in September 2009. Deposition of Kearney at 105:25 – 106:2; Deposition of Mrs. Kearney at 73:8-16. Kearney testified that he saw some of the wells and knew that the horsehead moving up and down meant that the well was pumping. Deposition of Kearney at 106:15-107:9; 153:8 - 154:2. Mrs. Kearney also testified that she saw oil pumps moving up and down during the visit to the Hillsboro Field and assumed that the machinery was pumping oil. Deposition of Mrs. Kearney at 73:22 - 74:14.

Plaintiffs were also aware that funds from the purchase of oil were held in suspense due to a lawsuit by Lowery-Waller. *See* Exhibit F to Motion. The closing statement for the purchase of working interest from Energy Capital Group clearly references Lowery-Waller and funds suspended by Lion Oil. *See id.* at 3. The closing statement is signed by Kearney. *See id.* Also, in correspondence regarding a potential sale of the Julirobi working interest to Burnside Producing, Mrs. Kearney specifically references the Lowery-Waller suit, an invoice for legal fees associated with that suit, and the closing statement signed by her husband. *See id.* at 1. On a copy of the October 23, 2009, letter to Plaintiffs detailing the terms of the proposed sale of Julirobi's working interest, "1,056.32" for "attorneys' fees and costs incurred as of September 23, 2009 in Lowery-Waller suit" is marked out and there is a handwritten notation that "they have agreed that we are not responsible for atty's fees" and an amended amount of "120,250.00" as the net proceeds of sale. *See* Exhibit G to Motion at 2.

Plaintiffs had knowledge of production from the wells and the lawsuit that caused revenues from production to be held in suspense. Any statement contrary to their knowledge

cannot be the basis for fraud, nor can failure to tell them something that they already knew. Plaintiffs cannot demonstrate justifiable reliance on a false representation, and Burnside, Burnside Producing, and Rebel Producing are entitled to summary judgment on all of Plaintiffs claims based on fraud, including those alleging violation of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duty, and civil conspiracy.

## Conclusion

The undisputed facts in this case demonstrate that Defendants are entitled to judgment as a matter of law on all of Plaintiffs' claims for breach of contract, violation of the Arkansas Deceptive Trade Practices Act, breach of fiduciary duty, tortious interference with business expectancy, and fraud. David Burnside, Burnside Producing, and Rebel Producing request that this Court enter summary judgment on all counts.

Respectfully submitted,

**David Burnside, Burnside Producing, LLC, and Rebel Producing, LLC**


By:   /s/ Karen Talbot Gean
      Ronny J. Bell (ABN 77010)
          rbell@bell-boyd.net
      Michael W. Boyd (ABN 97199)
          mboyd@bell-boyd.net
      Karen Talbot Gean (ABN 2001041)
          ktalbot@bell-boyd.net
      BELL & BOYD, PLLC
      100 North Court Square
      P.O. Box 841
      Magnolia, AR 71754-0841
      Telephone: (870) 234-6111
      Facsimile: (870) 234-6699

      ATTORNEYS FOR SEPARATE DEFENDANTS

## CERTIFICATE OF SERVICE

  I hereby certify that on February 11, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Lloyd W. "Tré" Kitchens
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR  72227
tkitchens@bradhendricks.com

             By: /s/ Karen Talbot Gean
                Karen Talbot Gean (ABN 2001041)
                ktalbot@bell-boyd.net